Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff, and all others similarly situated*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARGUESS NOOHI, individually, and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>THE HERSHEY COMPANY,<br><br>        Defendant. | Case No. 2:25-CV-04723-MRA-MAR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>(1)  Violation of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and<br>(2)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)<br>(3)  Violation of Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*)<br><br>**Jury Trial Demanded**<br><br>**(Amount to exceed $35,000)** |

Now comes the Plaintiffs, NARGUESS NOOHI ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her class action Complaint against the Defendant, THE HERSHEY COMPANY ("Defendant"), Plaintiff alleges and states as follows:

## **PRELIMINARY STATEMENTS**

1.      This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq*.),  Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*) and Violation of Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*) resulting from the illegal actions of Defendant, in advertising and labeling its products as containing "no artificial preservatives" when the products contain citric acid and lactic acid. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## **JURISDICTION AND VENUE**

2.      Defendant removed this case to the District Court of the Central District of California alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum or value of $75,000.00 in which members of the class are citizens of a State different from the Defendant.

3.      Plaintiff and Defendant met and conferred regarding whether this Honorable Court lacks equitable jurisdiction over Plaintiff's equitable relief claims pursuant to *Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020). Plaintiff articulated that the application of *Sonner* would result in splitting Plaintiff's causes of action regarding Plaintiffs UCL and CLRA claims. Defendant elected not to raise the issue, which Plaintiff takes as a sign of waiver and a concession that the court has equitable jurisdiction. Plaintiff believes the remedies sought under the

UCL and CLRA are distinct in several respects and believes the Court has equitable jurisdiction to award the remedies sought by this action.

4.    This court has personal jurisdiction over Defendant, because Defendant does business within the State of California.

5.    Venue is proper in this Court because Defendant does business *inter alia* in this District and a significant portion of the conduct giving rise to Plaintiffs Claims happened here.

## **PARTIES**

6.    Plaintiff Narguess Noohi is an individual who was at all relevant times residing in Los Angeles County, California.

7.    Defendant is a Delaware corporation headquartered in Hershey, Pennsylvania.

8.    At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of snack products.

## **FACTS COMMON TO ALL COUNTS**

9.    Defendant manufactures, advertises, markets, sells, and distributes products throughout California and the United States under brand name Pirate's Booty.

10.    During the Class Period Defendant labeled the following Pirate's Booty snacks (the "Products") as containing "no artificial preservatives" when they contain citric acid and lactic acid:

      a. Aged White Cheddar Puffs (citric acid);

      b. Cheddar Blast Puffs (citric acid, lactic acid);

      c. Smart Puffs (citric acid, lactic acid);

11.    Defendant uses artificial citric acid in the Products. Many commercial food manufactures, including Defendants, use a synthetic form of citric acid that is

derived from heavy chemical processing.[1] Commercially produced citric acid is manufactured using a type biologically engineered black mold called *Aspergillus niger*.[2] Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract citric acid from aspergillus niger fermentation liquor.[3] Citric acid produced through chemical solvent extraction contains residues of those chemical solvents.

12.    Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[4] Defendant uses synthetic manufactured citric acid in the Products.

13.    In warning letters sent to Oak Tree Farm Dairy, Inc. and the Hirzel Canning Company, the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because adding citric acid to the products precluded the use of the term "natural" to describe the products.[5]

---

[1] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[2] *Id*; Pau Loke Show, *et al.*, *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[3] 21 CFR 173.280

[4] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[5] See Exhibits A and B attached hereto

14.     Citric acid acts as a preservative when added to food products, including the Products at issue. The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors", specifically listing snack foods and baked goods as examples of goods where citric acid is a preservative.[6]

15.     In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[7]

16.     The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[8]

---

[6] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors
[7] *See* **Exhibit C** attached hereto.
[8] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

17.    The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[9]

18.    Defendant uses manufactured, artificial lactic acid in the Products.

19.    Manufactured lactic acid is produced through genetically engineered bacterial fermentation and acid base synthesis. Genetically engineered bacteria are fed a carbohydrate feedstock like glucose or sucrose and excrete lactic acid as a part of their biological metabolic process.[10] Lactic acid is then collected and refined by removing dead bacteria cells through Rotary Drum Vacuum Filter.[11] Lactic acid is then purified and extracted by adding a calcium salt like calcium carbonate $CaCo_3$ (lime, chalk) to cause a spontaneous synthetic acid-base reaction between the calcium carbonate and the lactic acid.[12] The result of that synthetic reaction is the salt calcium lactate. To purify and successfully convert the calcium lactate to lactic acid an additional industrial chemical, sulfuric acid is added to produce lactic acid and calcium sulfate (gypsum) the gypsum is then collected, and the lactic acid can then be further purified with organic solvents.[13]

---

[9] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

[10] Brin, *Biochem. Prepn.*, **3**, 61 (1953).

[11] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017).

[12] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017); A.O. Ojo & O. de Smidt, *Processes*, **11**, 688 (2023).

[13] *Id.*

20.    Lactic acid functions in pH reduction, flavor enhancement, and microbial inhibition. Confectionery, bakery products, beer, wine, beverages, dairy products, dried egg whites, and meat products are examples of the types of products in which lactic acid is used. [14]

21.    Lactic acid when added to food tends to prevent or retard deterioration thereof, but is not common salt, sugar, vinegar, a spice, an oil extracted from spices, a substance added to food by direct exposure thereof to wood smoke, or a chemical applied for its insecticidal or herbicidal properties.

22.    Based on the forgoing allegations, lactic acid is a chemical that retards the deterioration of food products. Therefore, it is a chemical preservative.

## PLAINTIFF'S PURCHASE

23.    On January 29, 2025, Plaintiff purchased one of the Aged White Cheddar Products from a Sprouts located in Los Angeles, California.

24.    When purchasing the Products Plaintiff made her purchasing decision because of the labeling on the Product that read "no artificial preservatives" as depicted below:

---

[14] J.D. Dziezak, Acids: Natural Acids and Acidulants, in Encyclopedia of Food and Health 15, 15–18 (Benjamin Caballero et al. eds., Academic Press 2016), https://doi.org/10.1016/B978-0-12-384947-2.00004-0.

1
2
3
4
5
6
7
8
9




10    25.    Plaintiff, and reasonable consumers, understand the term "artificial"

11  based on common parlance such that "artificial" means "made, produced, or done

12  by people".[15]

13    26.    Plaintiff understands that preservatives are ingredients that have the

14  capacity to prevent decay, decomposition, or spoilage.[16]

15    27.    Likewise, reasonable consumers understand based on common

16  parlance that preservatives are ingredients that have the capacity to prevent decay,

17  decomposition, or spoilage.[17]

18    28.    But for Defendant's misrepresentations, misleading and fraudulent

19  labeling, Plaintiff would not have purchased the Product or would have paid less for

20  the Product.

21
22
23
24

25  _____
    [15]    Artificial,    Merriam-Webster,    https://www.merriam-
    webster.com/dictionary/artificial (last visited Mar. 13, 2025).

26  [16]Preserving defined, merriam websters dictionary, https://www.merriam-
    webster.com/dictionary/preserving (last visited 7/14/2025); preservative defined,

27  merriam    websters    dictionary,    https://www.merriam-
    webster.com/dictionary/preservative, (last visited 7/14/2025).

28  [17] Id.

FIRST AMENDED CLASS ACTION COMPLAINT

29.    For Plaintiff's Product she paid $7.99 to receive six ounces of cheese corn puffs, or $1.33 per ounce. Meanwhile, cheese corn puffs without "no artificial preservatives" labeling is sold at the same stores for $0.86 per ounce.[18]

30.    Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims.

31.    The following photos include examples of the Products' packaging including the relevant labeling:








---

[18] Sprouts Farmers Market, *Lesser Evil Organic Real Cheddar Space Balls (5 oz)*, Sprouts (accessed July 17, 2025), https://shop.sprouts.com/store/sprouts/products/59487056-lesserevil-real-organic-cheddar-light-fluffy-organic-corn-puffs-space-balls-5-00-oz.

FIRST AMENDED CLASS ACTION COMPLAINT

32.     Plaintiff has been deprived of her legally-protected interest to obtain true and accurate information about the consumer products she buys as required by California Law.

33.     As a result, Plaintiffs and the class members have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would not contain artificial preservatives.

34.     Plaintiffs and the Class Members expected to receive the benefit of avoiding the negative potential effects of consuming artificial preservatives, however they have been deprived of that benefit because the Products contain artificial citric acid and lactic acid.

35.     Alternatively, Plaintiffs would not have purchased the Products in lieu of other similar Products without Defendant's misleading "no artificial preservatives" label.

36.     Plaintiffs and the Class Members paid a price premium to receive premium products that did not contain artificial preservatives, instead Plaintiffs received non-premium products containing artificial preservatives.

37.     Plaintiff did not understand that the Products contained artificial preservatives when she purchased them.

38.     Furthermore, due to Defendant's intentional, deceitful practice of labeling the Products as containing "no artificial preservatives", Plaintiff could not have known that the Products contained artificial preservatives.

39.     By making false and misleading claims about the qualities of the Products, Defendant impaired Plaintiffs' ability to choose the type and quality of the Products they chose to buy.

40.     Worse than the lost money, Plaintiffs and the class members have been deprived of their protected interest to choose the type and quality of the products they ingest.

First Amended Class Action Complaint

41.    Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products included artificial preservatives, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products contained artificial preservatives unless Defendant expressly told them, as required by law.

42.    Plaintiffs regularly visit stores where the Products are sold and will likely be exposed to Defendant's "no artificial preservatives" labeling in the future. However, unless Defendant is forced to correct the fraudulent labeling or remove the synthetic preservatives, Plaintiff will be unable to determine if Defendant's "no artificial preservatives" label accurately reflects the true contents of the Products.

43.    Plaintiffs believe that products without artificial preservatives are superior in quality to products that contain artificial preservatives, and desires to purchase Products that do not contain artificial preservatives as Defendant advertised the Products to be.

44.    Plaintiff may purchase the Products again in the future, and as a result they will be harmed if Defendant is not forced to correct the fraudulent labeling or remove the artificial preservatives.

45.    As a result of Defendants' acts outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

   a.    Lost money, as a result in a shift of the consumer demand curve which increases consumer demand, the number of units sold, and the price of the Products;

   b.    Wasting Plaintiff's time; and

   c.    Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## **CLASS ALLEGATIONS**

46.      Plaintiff brings this action on behalf of themselves and all others similarly situated, as members of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

47.      Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed California sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

48.      Defendant, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believe the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

49.      The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

50.      This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their

members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

51.     There are questions of law and fact common to the Class and Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

a.     Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by labeling the Products as containing "no artificial preservatives" when the Products contain citric acid and lactic acid;

b.     Whether the Class and Sub-Class members were informed that the Products contained artificial citric acid and lactic acid;

c.     Whether the Products contained artificial citric acid and lactic acid;

d.     Whether Defendant's conduct was unfair and deceptive;

e.     Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

f.     Whether the inclusion of artificial citric acid and lactic acid in the Products is a material fact;

g.     Whether there should be a tolling of the statute of limitations; and

h.     Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

52.     As a resident of the United States and the State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

53.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

FIRST AMENDED CLASS ACTION COMPLAINT

54.    Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

55.    A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

56.    The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

57.    Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

58.    The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

**COUNT I**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING ACT**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**
**On behalf of the Class and the Sub-Class**

59.    Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 50.

60.    Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

61.    California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

62.    Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products with labeling claiming the Products contained "no artificial preservatives" and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

63.    Specifically, Defendant claimed the Products "no artificial preservatives" when the Products contained artificial citric acid and lactic acid.

64.    Defendant knew that their representations were untrue and misleading, and deliberately made the aforementioned representations in order to deceive reasonable consumers like Plaintiff and other Class and Sub-Class Members.

65.     As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property.  Plaintiff reasonably relied upon Defendant's fraudulent statements regarding the Products, namely that they did not know the Products contained artificial preservatives.  In reasonable reliance on Defendant's misrepresentations of material fact and false advertisements, Plaintiff and other Class and Sub-Class Members purchased the Products.  In turn Plaintiff and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

66.     Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

67.     Defendant advertised to Plaintiff and other putative class members, through written representations made by Defendant and its employees, that the Class Products contain "no artificial preservatives"

68.     Defendant knew that the Class Products did in fact contain artificial citric acid.

69.     Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained artificial citric acid and lactic acid and were not as advertised.

70.     The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class and Sub-Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering

Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**COUNT II**
**VIOLATIONS OF UNFAIR BUSINESS PRACTICES ACT**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**
**On behalf of the Class and Sub-Class**

71.    Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 50.

72.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

73.    California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described

herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

74.    In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

75.    Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class and Sub-Class.

76.    Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products contained "no artificial preservatives" in order to induce them to spend money on said Class Products.  In fact, knowing that Class Products, by their objective terms contained artificial citric acid, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving consumer products.  Thus, the injury suffered by Plaintiff and the members of the Class and Sub-Class is not outweighed by any countervailing benefits to consumers.

77.    Finally, the injury suffered by Plaintiff and members of the Class and California Sub-Class is not an injury that these consumers could reasonably have avoided.  After Defendant, fraudulently labeled the Class Products as containing "no artificial preservatives" the Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them.

Defendant failed to take reasonable steps to inform Plaintiff and Class and Sub-Class members that the Class Products contained artificial citric acid and are not as advertised as a result. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase the products. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

78.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## FRAUDULENT

79.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

80.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

81.    Here, not only were Plaintiff and the Class and Sub-Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products at a price premium even though the Products contained artificial citric acid and lactic acid. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

82.    As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products containing "no artificial preservatives" when in fact the Products contain artificial citric acid.

83.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

84.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

85.    As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products as containing "no artificial preservatives" when in fact the Products contain artificial citric acid.

86.    Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

87.    Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq.*

88.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class and Sub-Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class and Sub-Class Members seek an order granting a public injunction requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## COUNT III
### Violation of Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750 et seq.)
### On behalf of the class and sub-class

89.    Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 53 above as if fully reiterated herein.

90.    Defendants' actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770, to the extent that Defendants violated the following provisions of the CLRA:

    a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; Cal. Civ. Code § 1770(5);

    b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; Cal. Civ. Code § 1770(7);

    c. Advertising goods or services with intent not to sell them as advertised; Cal. Civ. Code §1770(9);

    d. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; Cal. Civ. Code §1770(14); and

    e. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; Cal. Civ. Code §1770(16);

91.    Pursuant to *Cal. Civ. Code. §1782(d)* Plaintiff brings this CLRA action seeking injunctive relief on behalf of the general public. On or about April 28, 2025, through her Counsel of record, using certified mail with a return receipt

requested, Plaintiff served Defendant with notice of their violations of the CLRA, and asked that Defendant correct, repair, replace, or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendant that it must take such action within thirty (30) calendar days, and pointed Defendant to the provisions of the CLRA that Plaintiffs believe to have been violated by Defendant. Defendant has not replied to this notice letter with a letter dated on or before May 28, 2025, and thus refused to adequately correct, repair, replace, or otherwise rectify the issues raised therein

## MISCELLANEOUS

72.    Plaintiff and Classes Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the Class and Sub-Class, requests the following relief:

    (a)    An order certifying the Class and Sub-Class and appointing Plaintiff as Representative of the Class and Sub-Class;

    (b)    An order certifying the undersigned counsel as Class and Sub-Class Counsel;

    (c)    An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

    (d)    Actual damages suffered by Plaintiff and Class and Sub-Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class and Sub-Class Members from the sale

of misbranded Class Products during the relevant class period;

(e)     An order enforcing a public injunction as codified under the UCL, Cal. Bus. & Prof. Code § 17203, requiring Defendant to immediately cease acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

(f)     Punitive damages, as allowable, in an amount determined by the Court or jury;

(g)     Any and all statutory enhanced damages;

(h)     All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(i)     Pre- and post-judgment interest; and

All other relief, general or special, legal and equitable, to which Plaintiff and Class and Sub-Class Members may be justly entitled as deemed by the Court.

Dated:  July 18, 2025                    Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, PC

By: /s/Todd M. Friedman
    TODD M. FRIEDMAN, Esq.
    Attorney for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On July 18, 2025, I served a true copy of the First Amended Class Action Complaint on all counsel of record via the ECF Filing System: Executed on July 18, 2025.

[X] I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

[ ] I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By:     /s/ Todd M. Friedman
        Todd M. Friedman, Esq.
        Attorney for Plaintiff